IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| GERALD M. EARNEST, | ) | |
|     Plaintiff | ) | Case No: 1:08-CV-225 |
|     v. | ) | COLLIER/CARTER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
|     Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of the plaintiff's motion for judgment on the pleadings (Doc. 14) and defendant's motion for summary judgment (Doc. 18).

The sole issue presented is whether the Court should remand Plaintiff's claim because the decision of the Administrative Law Judge (ALJ) does not acknowledge or address the opinion of Plaintiff's treating physician as required by the Commissioner's regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Rul. 96-2p. Plaintiff, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), argues that failure to discuss the weight given to a treating physician's opinion warrants a remand even if substantial evidence otherwise supports the ALJ's decision. The Commissioner contends failing to give good reasons was harmless error because

1

the physician's opinion was "so patently deficient" that an ALJ could not have credited it. Here, the argument continues, the treating physician's opinion was contradicted by four other opinions, was unsupported, and was undercut by the treating physician's having subsequently suspected Plaintiff of illegal distribution of his prescription drugs.

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be REVERSED and the case remanded under Sentence Four of 42 U.S.C. § 405(g) for a re-evaluation of the medical evidence to allow the ALJ to adequately address the opinion of the treating physician and explain what weight he gives this physician.

## II. Background

### A. Procedural History

On November 8, 2005, Plaintiff filed for Title II and Title XVI benefits, alleging an onset date of November 15, 2004. (Tr. 34, 363). Denied at the Initial and Reconsideration levels (Tr. 34, 35, 358, 364), Plaintiff timely requested a hearing before an administrative law judge. (Tr. 46).

The hearing took place on August 14, 2007, in Chattanooga, Tennessee, before ALJ Ronald J. Feibus (Tr. 367). A vocational expert was present at the hearing, as was Plaintiff's counsel. (Tr. 369). After this hearing, the ALJ had Plaintiff examined by consultative examiners Edward Johnson, M.D., and Wayne Kim, M.D., a psychiatrist. The ALJ conducted a supplemental hearing on March 27, 2008, for the purposes of eliciting testimony from John Goff, M.D., a psychiatrist, and from Arthur Lorber, M.D., an orthopedic surgeon. (Tr. 402). Counsel represented Plaintiff, who was not present. *Id.* A second vocational expert, David Boatner, Ph.D., ("VE") also testified. *Id.*

The ALJ rendered an unfavorable decision April 21, 2008. (Tr. 11-24). Plaintiff timely appealed the decision to the Appeals Council, which declined to review it on July 22, 2008, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 5, 9). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the

3

Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since November 15, 2004, the alleged onset date.

3. The claimant has the following severe impairments: lumbar spondylosis and/or other degenerative disc disease, osteoarthritis and/or other degenerative changes in the knees and left shoulder, depression, and opiate dependence.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the following: the claimant may lift 20 pounds occasionally and 10 pounds frequently; the claimant may stand/walk for four hours of an eight-hour workday, no more than one hour at a time; the claimant may sit without limitation; the claimant has no manipulative restrictions; the claimant may not work at unprotective heights or around dangerous/moving machinery; the claimant should not balance, kneel or crawl; and the claimant is moderately impaired in his ability to make judgments on complex work-related decisions.

6. The claimant is unable to perform any past relevant work.

> 7. The claimant was born on December 30, 1958 and is 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2004 through the date of this decision.
>
> (Tr. 16-24) (citations omitted).

*B. Relevant Evidence*

Plaintiff worked as a brick layer for over thirty years before ceasing substantial gainful activity November 15, 2004, because of severe pain and swelling, particularly in his left shoulder, back, and left leg. (Tr. 16, 88). After reviewing an MRI of Plaintiff's lumbar spine from October 26, 2006, Dennis Ford, M.D., Plaintiff's pain doctor, diagnosed him with a herniated lumbar disc, degenerative disc disease, and lumbar spondylarthitis. (Tr. 224). An x-ray of Plaintiff's thoracic spine showed bone spurs and a slight wedge fracture. (Tr. 294). Arthroscopic surgery on February 15, 2006, confirmed diagnoses of impingement syndrome, degenerative joint disease, and synovitis of his left shoulder. (Tr. 260). Other evidence in the

5

record indicates that Plaintiff suffers from COPD (Tr. 172, 181), obesity (Tr. 144, 226), depression (Tr. 206, 304), and anxiety (Tr. 182, 288).

Clinical exams of his back showed reduced range of motion, spasms and hypertrophy. (Tr. 145, 224, 295). He often walks with an antalgic gait (Tr. 224, 249, 287, 294). He demonstrated a limited range of motion in his left shoulder even a year and a half after his shoulder surgery. (Tr. 268, 294). Dr. Ford records that standing, walking, bending, lifting, and prolonged sitting will aggravate Plaintiff's pain. (Tr. 320).

Plaintiff has persistent swelling of his legs, especially the left (e.g., Tr 145, 176, 194, 294, 322). He alleges pain as well as occasional numbness and tingling in the left leg (Tr. 108, 238), which was swollen greater than the right leg at the calf by two and a half centimeters during Dr. Johnson's examination in the fall of 2007. (Tr. 294). The suspected cause of the swelling is thought to be the result of blood poisoning prior to the onset date, but no one has confirmed the exact etiology. (Tr. 222, 381).

Plaintiff managed his pain primarily through medication. He received epidural steroid injections in his back in 2006 and 2007 (Tr. 256-58), and he received a depo injection in his shoulder in June of 2006, four months after his shoulder surgery. (Tr. 268). At one time, Plaintiff's providers had prescribed 140mg of methadone a day in addition to oxycontin, but Dr. Ford weaned him off the oxycontin and brought down his methadone intake to 40mg a day. (Tr. 224). Dr. Ford also notes that Plaintiff uses a TENS unit. *Id.*

Nabil Cyleman, M.D., treated Plaintiff for his pain from March 27, 2003 until September 14, 2006. (Tr. 155-220; 272-83). On March 13, 2006, Dr. Cyleman completed a medical source statement of Plaintiff's functional limitations. (Tr. 218-20). He opined that Plaintiff could not

6

lift any amount of weight on more than an infrequent basis and that he would have to lie down for approximately three hours during the workday. (Tr. 218-19). He also indicated that Plaintiff suffers moderately severe pain and experiences lapses in concentration or memory several hours a day. (Tr. 219). Lastly, Dr. Cyleman stated that Plaintiff would have a medical need to be absent from work four to five times a month. (Tr. 220).

Consultative examiner William Holland, M.D., found Plaintiff able to lift thirty pounds occasionally and ten to fifteen pounds frequently, so long as he could be seated about twenty minutes of the hour. (Tr. 145).

Noting that Plaintiff has arthritis in several areas (Tr. 296), consultative examiner Edward Johnson, M.D., opined that Plaintiff could carry up to fifty pounds on an occasional basis and up to twenty pounds on a frequent basis. (Tr. 298).

Consultative examiner Wayne Kim, M.D., diagnosed Plaintiff with depression and assessed him with mild-to-moderate mental limitations. (Tr. 304-10).

At the second hearing, psychiatrist John Goff testified that Dr. Kim's assessment regarding Plaintiff's mental limitations "was compatible with the record." (Tr. 413). Dr. Goff corrected the ALJ that Plaintiff was not a methadone addict but that he was methadone dependent, "as are many chronic pain patients." (Tr. 409). Dr. Goff testified further that "the depression is primarily related to his pain." (Tr. 408). According to Dr. Goff, Plaintiff's cloudy thinking and slurred speech could be a result of depression but that they likely were precipitated by either fatigue or medication. (Tr. 410).

Medical expert Arthur Lorber, an orthopedic surgeon, stated that Plaintiff could walk or stand a total of four hours of the day, could lift twenty pounds occasionally, ten pounds

7

frequently, and could not use his left leg on a frequent basis. (Tr. 425). Dr. Lorber essentially testified that none of the MRIs or X-rays in the record evinced any problems that would cause significant limitations or pain. (Tr. 422-24, 430-32). He stated that the arthroscopic surgery should have fully repaired Plaintiff's left shoulder. (Tr. 424-25).

Dr. Lorber did indicate, however, that a puncture wound and resulting blood poisoning could cause Plaintiff's left leg to hurt and swell. (Tr. 433). Noting that none of Plaintiff's doctors had attempted to treat the leg, Dr. Lorber ventured that he could alleviate the swelling by having Plaintiff wear a compression stocking. (Tr. 434).

The VE testified that, given the limitations in Dr. Lorber's and Dr. Kim's assessments, a person of Plaintiff's age, education, and experience could perform a number of simple, unskilled jobs requiring a sit stand option. (Tr. 437-40).

### III. Discussion

As set out above, the sole issue is whether remand is required because the decision of the ALJ does not address the opinion of Plaintiff's treating physician as required by the Commissioner's regulations. The relevant regulations are found in 20 C.F.R. §§ 404.1527(b) and (d). There are also parallel regulations in 416.927 (b) and(d):

> .....
> (b) How we consider medical opinions. In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.
> ......
> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

8

> (1) Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations........**We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.** (emphasis added)

See also:  Soc. Sec. Rul. 96-2p.

Plaintiff cites *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004), in which the Court of Appeals for the Sixth Circuit remanded a denial of Social Security benefits finding a law judge's failure to give "good reasons," is grounds for remand even if substantial evidence otherwise supports the ALJ's decision. *Wilson,* 378 F.3d at 544. The court explained that the Treating Physician Rule constitutes "an important procedural safeguard for claimants for disability benefits." *Id.* at 547. The provision of reasons also helps explain an adverse ALJ decision to a claimant whose physician indicated he is disabled and thus "'might be especially bewildered when told by an administrative bureaucracy that [he] is not . . . .'" *Id.* at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The explanation further assists the Appeals Council and the federal courts in conducting meaningful review. *Id.* (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (outlining principles of review of administrative decisions).  The court in *Wilson* is quite specific as to a failure such as this:

9

> Although substantial evidence otherwise suports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like Wilson. The regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination. 20 C.F.R. § 404.1527(d)(2) (2004). This requirement is part of the "treating source" regulation adopted by the Social Security Administration in 1991.....

*Wilson*, 378 F.3d at 544.

If an ALJ does not provide an assessment of the opinion of a treating source, remand and reversal may not be required if the violation has only been *de minimis*. *Id.* at 547. The *Wilson* court identified the following examples of circumstances that "may not warrant reversal;" (1) "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2)-- the provision of the procedural safeguard of reasons--even though [he] has not complied with the terms of the regulation." *Id.* at 547.

None of those circumstances are supported by this record. In this case Plaintiff was treated by Dr. Nabli Cyleman from March 27, 2003 until September 14, 2006, as the ALJ notes in his decision (Tr. 18). The ALJ notes Dr. Cyleman dismissed Plaintiff based on suspected drug trading or selling. On March 13, 2006, some six months prior to the end of the treatment relationship, Dr. Cylemon gave an opinion that Plaintiff had moderately severe pain which would cause lapses in concentration or memory on a regular basis several hours per day, would be chronically absent from work (more than 4 times a month) and would need bed rest during a normal workday every 3 hours (Tr. 219-20). The ALJ failed to address this disabling opinion

10

even though Plaintiff had been regularly treated by him over a three year period. In a recent September 24, 2009 opinion of the Sixth Circuit, *Blakley v. Commissioner of Social Security*, ____ F.3d.___, 2009 WL 3029653 (6th Cir. Sept. 24, 2009), the Court again addressed this issue. After reviewing the treating physician rule, the *Blakley* court addressed the weight to be given the opinions of treating physicians:

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).
>
> Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. The *Wilson* Court explained the two-fold purpose behind this procedural requirement:
>
>> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is no, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.
>
> *Wilson*, 378 F.3d at 544. Because the reason-giving requirement exists to "ensure[e] that each denied claimant receives fair process," we have held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence*, even where the

11

conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

I conclude the failure to address the disabling opinion of the treating physician was error and *Wilson* and *Blakley* require remand under this circumstance unless the error was harmless.

The Commissioner asserts the error is harmless and advances three arguments in support of this position:

First, Dr. Cyleman's opinion is contradicted by the opinions of four other doctors, including examining physicians Drs. Holland and Johnson (Tr. 145, 298–99), medical expert Dr. Lorber (Tr. 425), and reviewing physician Dr. Warner. (Tr. 136.) However, as Plaintiff argues, none of the physicians who provided less-than-disabling opinions are treating sources. Two of the physicians—Drs. Lorber and Warner—are not even examining sources, whose opinions are to be weighed by stricter standards. *see* 20 C.F.R. § 404.1527(d). As a treating source for a number of years, Dr. Cyleman's opinion would ordinarily be entitled to more weight than the opinions of these four physicians who did not have an ongoing treatment relationship with Plaintiff. In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine plaintiffs only once. *See Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 526 (6th Cir. 1981). I also note that Dr. Cyleman was not the only physician who noted the presence of pain. Dr. Ford reported chronic pain in his treatment notes from November 7, 2006 to June 14, 2007 (Tr. 225-252). Dr. Zotos reported some point tenderness along the lower back with tightening of the paraspinal muscles. He assessed right shoulder and lower back pain and noted some somnolence, possibly secondary to medication. He counseled Plaintiff

12

extensively on the use of narcotics (Tr. 287). Under this circumstance, the ALJ must address the weight he gives to the treating physician's opinion.

Next, the Commissioner argues, Dr. Cyleman's opinion was unsupported — it consisted of limitations but no explanation. (Tr. 218–20). It is certainly true that the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. *See* 20 C.F.R. § 404.1527(d)(3). However, it is for the ALJ to make the determination of how much weight any opinion is to be given. Here we are left to guess how the ALJ would assess the weight to be given this clearly disabling opinion of a treating source with a long term relationship with the patient.

Finally, the Commissioner argues several months after he offered his opinion, Dr. Cyleman dismissed Plaintiff from his practice because he suspected Plaintiff was illegally trading or selling his prescription medication (Tr. 274.) The Commissioner suggests that Plaintiff was seeking treatment not because he needed medication for pain, but rather because he wanted to sell his medication and argues a Sixth Circuit unpublished opinion supports the notion that where "The evidence indicates that [a claimant] was seeking treatment to obtain pain medication," an ALJ may discount the treating physician's opinion. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). That may in fact be a factor that could be considered by the ALJ, but once again this goes to the weight to be given the opinion, a decision to be made by the ALJ, not this court. The regulations require the ALJ to evaluate the disabling opinion of a treating source. No such evaluation took place. I conclude the Commissioner's violation of the treating source

13

rule is not harmless error, that I am bound by *Wilson* and *Blakley* and must therefore recommend remand.

## IV. Conclusion

For the reasons stated herein, I RECOMMEND the Commissioner's motion for summary judgment (Doc. 18) be DENIED and the Plaintiff's motion for judgment on the pleadings (Doc. 14) be GRANTED:

(1) the Commissioner's decision denying benefits be REVERSED,

(2) the case be REMANDED under Sentence Four of 42 U.S.C. § 405(g) in order that the evidence presented in this case can be properly evaluated.[1]

Dated: October 5, 2009                    s/William B. Mitchell Carter
                                          UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).